E. B. WARREN AND R. L. WARREN v. ARMOUR FERTILIZER WORKS.

(Filed 17 March, 1926.)

**1. Contracts—Bills and Notes—Collateral Security—Damages—Instructions—Directing Verdict—Appeal and Error.**

Where there is evidence that cotton warehouse receipts were pledged as collateral security to a note under an agreement that the cotton was to be held and sold when the price was satisfactory to the pledgee, and the pledgor breached this agreement to the damage of the pledgee, and there was evidence tending to show that the pledgee was present and assisting at the sale: *Held,* an instruction directing a verdict in the pledgee's favor if they found that pledgor breached his contract, without reference to pledgee's acquiescence, is reversible.

**2. Instructions—Corrections—Appeal and Error—Reversible Error.**

An incorrect instruction is not cured by another and correct instruction, upon the same phase of the case, and which was not stated by the judge to be a correction of the error, and the jury has been left to choose between the two.

APPEAL by defendant from *Devin, J.,* at November Term, 1925, of HARNETT. New trial.

Action to recover damages for breach of contract and for conversion. The issues submitted to the jury, with answers thereto, are as follows:

1. Did the defendant agree, in consideration of plaintiff's storing 45 bales of cotton as collateral security for its debt, that it would hold said cotton until sale directed by plaintiffs, or until the market reached a price satisfactory to plaintiffs, as alleged in the complaint? Answer: Yes.

2. Did the defendant fail to comply with said agreement? Answer: Yes.

3. What damage, if any, are plaintiffs entitled. to recover therefor? Answer: $2,263.58, with interest.

From judgment on this verdict, defendant appealed to the Supreme Court.

*Godwin & Williams, Young & Young and Clifford & Townsend for plaintiffs.*

*Cook & Cook and M. T. Spears for defendant.*

CONNOR, J. .There was evidence sufficient to support the answer to the first issue. Plaintiffs purchased of defendant, for use in their farming operations for the year 1920, a large quantity of fertilizers, paying therefor $5,000 in cash, and giving their notes for about $8,000, for the balance due on the purchase price. These notes became due in the fall of 1920; plaintiffs were unable to pay the notes, and on account of the falling price of cotton, did not wish to sell their crop. At the request of defendant, they stored in a warehouse at Dunn, N. C., in December, 1920, 45 bales of cotton, taking warehouse receipts therefor, which they assigned and delivered to defendant, as security for their notes, which were then past due. Defendant's agent testified that he told plaintiffs that defendant would hold the cotton for a reasonable length of time. Plaintiff, E. B. Warren, testified that the agreement with defendant was that the cotton should be held until it could be sold for a satisfactory price. On 13 May, 1921, at the request of defendant, plaintiffs executed their note for $1,700, payable to the order of defendant, on or before 1 July, 1921. This note contained the following words: "This note being secured by 45 bales of cotton stored in the warehouse of the General Utilities Co." The amount of the note was the estimated value of the cotton at its date; when paid it was to be credited on the indebtedness of plaintiffs to defendant as evidenced by the notes executed in the spring of 1920, and maturing in the fall thereafter. Plaintiff, E. B. Warren, testified that the agent of defendant agreed at the time of the execution of the note, that if the price of cotton, at the maturity of the note, was not satisfactory to plaintiffs, defendant would not sell the cotton, but would hold it until the price was satisfactory to them. This was denied by the agent of defendant. The jury, however, has found with plaintiffs, and have accordingly answered the first issue, Yes.

The cotton was sold by defendant on 6 July, 1921, at nine and five-eighths cents per pound. Plaintiffs offered evidence that this was not a satisfactory price to them, and that they objected to the sale at this

27—191

price. Evidence was offered by defendant tending to show that one of the plaintiffs was present when the cotton was sold, and made the sale in person; that neither of plaintiffs objected to the sale. Defendant denied that there was an agreement as alleged in the complaint, but alleged that plaintiffs consented to and acquiesced in the sale on 6 July, 1921, at nine and five-eighths cents. There was evidence that the market price of cotton in September, 1920, was 20 cents per pound, and that this was a satisfactory price to plaintiffs.

There is no exception to the charge of the court upon the first issue. Upon the second issue, the court instructed the jury as follows:

"If you find by the greater weight of the evidence that defendant made the agreement alleged by the plaintiffs, referred to in the first issue, then your answer to the second issue would also be 'Yes', because it is not denied by defendant; they deny they made any such agreement, but if you find that they did make the agreement, if you find the facts as testified to, you would answer it (the second issue), 'Yes.' " Defendant excepted to this instruction and assigns same as error.

In giving this instruction the learned judge was manifestly inadvertent to the testimony of John H. Cook, who testified that "he was in Dunn on the day the cotton was sold, and saw plaintiff, Dr. R. L. Warren, on the street; that Dr. Warren told him that the bank (which held the note for $1,700, with warehouse receipts for the cotton as collateral, for collection) had received instructions from defendant to sell the cotton; that he was going to handle and sell the cotton himself; that later Dr. Warren told him that he had handled the cotton himself to see that it brought the market price." George M. Floyd testified that he saw Dr. Warren in the bank on 6 July, 1921, and heard him say that he had been selling the cotton he had stored for Armour; that he was hot as the result of his work in selling the cotton. This assignment of error must be sustained.

Later in his charge, his Honor instructed the jury as follows: "On the second issue, the contention on the part of the defendant is that even if there was such an agreement between the parties, it was waived by the acquiescence of the plaintiffs in the sale of the cotton; and if you find that they did acquiesce in the sale and defendant sold it, plaintiffs could not hold defendant for breach of the agreement. If you find those to be the facts, you would answer the second issue 'No'; you could not answer it 'Yes' unless you find by the greater weight of the evidence that defendant failed to comply with the agreement and said failure was not waived or acquiesced in by plaintiffs." Defendant excepted to this instruction and assigns same as error.

Counsel for plaintiffs, in their brief, say that if the former instruction should be held as error, the latter instruction corrects and cures the

error. We cannot so hold. Defendant was not relying upon a waiver by plaintiffs of the agreement, or upon their acquiescence in the sale. It contends that the cotton was sold by plaintiffs, on 6 July, 1921, at a price which was satisfactory to them. There was evidence to support this contention. The jury should have been instructed to answer the second issue "No," if they found from the evidence that one of the plaintiffs, Dr. Warren, personally sold the cotton on 6 July, 1921, at nine and five-eighths cents per pound. There was evidence to the contrary; the conflicting evidence should have been submitted to the jury, under an appropriate instruction.

Assuming, however, that the latter instruction was sufficient, and that is was intended by his Honor as a correction of the error in the former instruction, upon his attention being directed thereto by plaintiffs' counsel, it does not clearly appear that the jury was so instructed or so understood it. The case was therefore submitted to the jury upon contradictory instructions. This entitles defendant, who was prejudiced thereby, to a new trial. *Young v. Comrs.,* 190 N. C., 845, and cases there cited in the opinion by *Justice Adams.*

New trial.